# Wassel et ux. *v.* Ludwig, Appellant.

*Negligence—Proximate cause—Minors—Dangerous weapons—Act of June 10, 1881 P. L. 111.*

In an action of trespass to recover damages for the death of a minor child the evidence was that the child was killed by a bullet discharged from a rifle in the hands of a boy 14 years old. The boy received the rifle from playmates, also minors, who purchased it from defendant. The responsibility of the defendant arose as charged in the statement of claim, out of the fact that his sale of the rifle and ammunition was in violation of the Act of June 10, 1881 P. L. 111, making it a misdemeanor to sell a deadly weapon to a person under sixteen years of age, and that the use of the gun, resulting in the death of the daughter of the plaintiffs, was a consequence of the unlawful sale of the weapon.

In such a case it was for the jury to say whether the defendant, knowing the forbidden weapon was to be used by the purchasers, ought not to have anticipated that it would be used likewise by their playmates, and in circumstances dangerous to persons and property.

The placing of the rifle in the hands of minors contributed to the tragedy in a way so immediate and direct that defendant's responsibility existed under the verdict, the jury having found that he should reasonably have anticipated that acts of an injurious character were likely to be committed as a consequence of entrusting incompetent youths with the control of a loaded rifle.

It is not necessary that the defendant should have anticipated that particular casualty; it was sufficient that his act was likely to result in injury to some one.

Argued October 20, 1927. Appeal No. 33, February T., 1928, by defendant from judgment of C. P. Luzerne County, No. 1005 December T., 1924, in the case of George Wassel and Elizabeth Wassel v. Max Ludwig. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Trespass to recover damages for the death of a child. Before COUGHLIN, J.

The opinion of the Superior Court states the facts. Verdict for plaintiff in the sum of $2,060 and judgment thereon. Defendant appealed.

*Errors assigned* were the refusal of judgment for

defendant non obstante veredicto and the order of the court.

*M. J. Mulhall,* for appellant.

*Frank P. Slattery,* and with him *Herman J. Goldberg,* for appellee.

OPINION BY HENDERSON, J., March 2, 1928:

A daughter of the plaintiffs, Anna, aged four years and ten months, was killed on October 17, 1924, by a bullet fired from a Flobert rifle by Tony Klosnowski, a boy aged about fourteen years, who at the time of the occurrence was in company with Walter Klocko, Joseph Bolsiewicz and Zigmund Pieszata, boys from thirteen to fourteen years of age. They were in an alley near the home of the plaintiffs, and the little girl was in the lot where she lived. The weapon used by Klosnowski had been bought before noon of the same day by Klocko and Bolsiewicz from the defendant at his store in Pittston. Klocko was fourteen years of age and Bolsiewicz thirteen. One of them had $3 in his possession and the other $0.50, and with this money they paid for the rifle and ammunition. They returned to Exeter where they lived and being joined by Pieszata, they used about half of the cartridges shooting at various objects along the river bank. Later they were joined by Klosnowski at or near the place where the shot was fired which killed the child. While in the alley, Klocko fired one shot at a bottle and Klosnowski, having been given possession of the rifle, fired twice, once in the air and once at a chicken, the latter shot causing the child's death. Klocko handed the gun to Klosnowski in the presence of Bolsiewicz. The boys were associates and were employed as caddies at a golf course in the vicinity. The responsibility of the defendant arose, as charged in the statement of claim, out of

the fact that his sale of the rifle and ammunition was in violation of the Act of June 10, 1881, P. L. 111, which made it a misdemeanor to sell a deadly weapon, gun powder, or explosive substance to a person under sixteen years of age, and that the use of the gun resulting in the death of the daughter of the plaintiffs was a consequence of the unlawful sale of the weapon which ought reasonably to have been anticipated by the defendant. The defense presented was that the injury complained of was not the proximate result of the defendant's act, and that he was therefore entitled to binding instructions, or judgment non obstante veredicto. The case was submitted to the jury on the inquiry whether the defendant violated the statute by wilfully selling the rifle and cartridges, and if so whether the act complained of was a natural and probable consequence of such violation. The law with respect to proximate and remote causes has been frequently discussed by text book writers and in adjudicated cases, and is in some instances difficult of application. A general statement on the subject is that "in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances": Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469. Proximate damages are the ordinary and natural results of negligence, and such as might have been expected, and the law requires a wrongdoer to anticipate what is usual or probable. The natural probability of a consequence which ought to have been seen is a matter of fact to be determined from the evidence, and every case must depend on its circumstances: Kellogg v. Chicago, Northwestern Ry. Co., 26 Wis. 224; Pennsylvania Railroad Co. v. Hope,

80 Pa. 373. The application of the rule is not controlled simply by time or distance, but by the succession and relation of events. The misconduct charged will not be considered too remote if according to the usual experience of mankind the result ought to have been apprehended: Lane v. Atlantic Works, 111 Mass. 136; McDonald v. Snelling, 14 Allen 290; Thomas v. Winchester, 6 N. Y. 396; Weick v. Lander, 75 Ill. 93. One who engages in an act unlawful in itself is not excused although other causes may have subsequently contributed in producing the injury. Where the circumstances or event which concurs with the original unlawful act in causing the injury might reasonably have been foreseen as likely to occur, the person responsible for such negligent act is liable for the resulting injury: Stehle v. Jaeger Auto Machine Co., 225 Pa. 348; Thomas v. Winchester, supra; Illidge v. Goodwin, 5 Car. & Payne 190. This principle was applied in Loughlin v. Pennsylvania Railroad Co., 240 Pa. 174. That case arose out of the following state of facts: A group of boys and girls were walking along a city street, on which was located a railroad track. Two boys in the party found two railroad torpedoes in the street. They were tin boxes about the size of a silver half-dollar, and were used to produce explosions to give notice of a train ahead on the track. The torpedoes were taken to a neighboring house where an unsuccessful attempt was made to open one of them with a knife. Afterwards they were taken into the yard where one of the young people attempted to open one of them with a hatchet, with the result that the torpedo exploded whereby several of the children were injured. The court in reversing the action of the court below granting a compulsory nonsuit held that negligence may be the proximate cause of an injury of which it is not the sole or immediate cause. Where the defendant's negligence concurred with some other

event to produce the injury so that it appears that
without such negligence it would not have occurred
and both circumstances are closely connected with the
injury in the order of events, the defendant is respon-
sible though his negligent act was not the nearest
cause in the order of time: Burrell Twp. v. Albert
Uncapher et al., 117 Pa. 353; Wood v. Penna.
R. R. Co., 177 Pa. 306. In Stehle v. Jaeger,
supra, the court said, if the negligent act of the de-
fendant in employing the plaintiff induced or offered
opportunity for the subsequent act of the latter and if
his act was of a character common to youthful indis-
cretion not only would causal connection be shown, but
the law would refer the injury to the original wrong
as its natural and probable cause notwithstanding an
intervening agency between that wrong and the injury.
Of the same import is Cooley on Torts 76. The case
of Billman v. The Indianapolis, etc., Railroad Co., 76
Ind. 166, contains an extended discussion of this sub-
ject and sustains the rule above stated. In Griggs v.
Fleckenstein, 14 Minn. 81, the facts were that the de-
fendant negligently left a team of horses unhitched
on the street of a town. They ran away and in so
doing collided with the team of another person hitched
to a post on the street, whereby the latter team was
frightened and ran against a horse and sleigh of the
plaintiff. The court held that liability could not be
avoided on the ground that the injury was not the
proximate cause of the defendant's negligence. In Ad-
dison on Torts, section 12, the general rule is said to
be that whoever does any illegal or wrongful act is
answerable for all consequences that ensue in the ordi-
nary and natural course of events though those con-
sequences be immediately and directly brought about
by the intervening agency of others providing the in-
tervening agents were set in motion by the primary
wrongdoer. See also Ketterer v. Armour & Co., 200

Fed. Rep. 322 and Catani v. Swift & Co., 251 Pa. 52. A case reported in 82 Ind. 426, Binford v. Johnston, is similar on its facts to that now before us for adjudication. In that case two sons of the plaintiff aged twelve and ten years, respectively, bought from the defendant, a dealer in such articles, pistol cartridges for use in a toy pistol. Shortly afterward the pistol loaded with one of the cartridges was left lying on the floor of their home. A brother, six years of age, picked up the pistol and discharged it and in so doing killed one of the brothers who had procured the cartridges. A statute was in force in that state making it a misdemeanor to sell, barter, or give to any other person under the age of twenty-one years, any cartridges manufactured and designed for use in a pistol, and in review of the law bearing on the subject, the court held that responsibility attached to the vendor of the cartridges, and that his unlawful conduct was the primary cause of the death of the boy. This case is cited in Shaffer v. Mowery, 265 Pa. 300, where the present Chief Justice referring to the Act of June 10, 1881, said: "When defendant sold the shell to Samuel, he violated this statute, thereby making himself liable for any natural or probable harmful result which might follow in the wake of the wrongful act." Negligence on the part of the plaintiffs is not suggested, and of course is not attributable to the girl who was killed. Applying the law, as stated in the cases cited and others to which reference need not now be made, we are of the opinion that this case was properly submitted to the jury: Shaffer v. Mowery, supra; Milwaukee etc., Ry. Co. v. Kellogg, supra. The facts, as well as the inferences to be drawn therefrom, are for the jury. The statute forbidding the sale of the rifle by the defendant was not intended merely as a protection to minors under sixteen years of age who might become purchasers of the dangerous instru-

mentalities named. It has a broader view and expressed the judgment of the Legislature based on human experience that persons of immature years could not safely be entrusted with such menaces to life and limb. It takes notice of youthful indiscretion and the propensity of children to be attracted by toys and devices dangerous to themselves and those with whom they may come in contact. It is a matter of common observation that young boys are gregarious in their habits, playful in disposition, and often reckless and inconsiderate in their sports and amusements, and of this the defendant was bound to take notice even if there were no statute. The court could not declare as a matter of law that the play in which the boys who bought the weapon and their associates were engaged and the use of the gun by some of the latter with the permission of the owners, were not probable results of the unlawful act of the defendant. It was for the jury to say whether the defendant, knowing the forbidden weapon was to be used by the purchasers, ought not to have anticipated that it would be used likewise by their playmates, and in circumstances dangerous to persons and property. Boys are likely to be generous in the use of their playthings and it would not be an unreasonable expectation that they would give permission to their companions to use the rifle. That they permitted Klowsnowski so to do at the time of the accident was not so unnatural and improbable as to warrant the court in declaring that it was an intervening cause not to have been reasonably apprehended. It is not necessary that the defendant should have anticipated the particular casualty; it was sufficient that his act was likely to result in injury to some one because he had put the boys in possession of a dangerous weapon. When he sold the gun and the ammunition in defiance of the statute, he made himself liable for any injurious

result which might naturally or probably follow as a consequence of his act. It is clear that the placing of the rifle and cartridges in the hands of Klocko and Bolsiewicz contributed to the tragedy, and in a way so immediate and direct that the defendant's responsibility exists under the verdict, the jury having found that he should reasonably have anticipated that acts of an injurious character were likely to be committed as a consequence of entrusting incompetent youths with the control of a loaded rifle.

There was but a general exception to the charge of the court and no request was made at its conclusion for further instruction, although the counsel were asked whether additional instructions were desired. Taking the charge as a whole, the jury would have no difficulty in understanding it, and the instruction as to the measure of damages was not erroneous. The whole charge must be taken into consideration in determining whether there was a misdirection. The verdict was not so excessive as to require a new trial, and the present earning capacity of the child could not be proved at her age: Sebring v. Bell Telephone Co., 275 Pa. 131.

The assignments are overruled and the judgment affirmed.