Pierson et al., Appellants, *v.* London.

Argued December 10, 1930.

Be-
fore TREXLER, P. J., KELLER, LINN, GAWTHROP, CUN-
NINGHAM, BALDRIGE and WHITMORE, JJ.

*R. A. Henderson,* and with him *Ruth Forsht,* for appellant.

*John J. Haberstroh,* for appellee.

OPINION BY GAWTHROP, J., January 30, 1931:

This is an action of trespass brought by Patrick Pierson, aged four years, by his father and next friend, Thomas A. Pierson, and by the parents of the said Patrick Pierson in their own right, to recover damages resulting from personal injuries sustained by Patrick Pierson. The statement of claim averred, inter alia, that on June 8, 1927, the minor plaintiff and another child, Rhuehanna Gray, aged fourteen years, went to defendant's store and purchased a torpedo about three quarters of an inch in diameter, which contained a dynamite cap and small pebbles; that the torpedo was intended to be exploded by striking it against a hard substance; that it was highly dangerous and likely to cause injury to persons; that its dangerous character was well known to defendant; that defendant kept such explosive torpedoes for the purpose of sale and had in his employ his daughter, who had authority to sell them for defendant; that Patrick Pierson purchased the torpedo from the daughter; and that defendant was guilty of negligence in selling and delivering the highly explosive torpedo to Patrick Pierson. It averred also that the sale of the torpedo by defendant to plaintiff was in violation of the Act of Assembly approved June 10, 1881, P. L. 111, which makes it a misdemeanor for any person to, knowingly and wilfully, sell or cause to be sold to any "minor under sixteen years of age......any cartridge, gunpowder or other dangerous and explosive substance." The case was tried and submitted

on the theory that defendant's liability arose from his violation of the statute rather than from his negligence in selling a dangerous substance to an infant who could not appreciate its danger. The trial resulted in a verdict in favor of the boy for $1,116.75 and a verdict against the parents. The court below subsequently entered judgment non obstante veredicto in favor of defendant and against the boy, who brings this appeal.

The ground upon which the court below deprived him of his verdict and entered judgment against him was that there was a variance between the allegations and the proofs, in that, while he and his companion testified that they went to defendant's store and purchased three small torpedoes from a woman who was back of the counter, "there is......no testimony to support the averment......which reads as follows: 'And it was from his daughter that the said Patrick Pierson purchased said torpedo' ...... There is no proof that either of the daughters of defendant made such sale and notwithstanding this objection was raised at the time of the trial, plaintiffs did not offer to amend the plaintiffs' statement, but proceeded to try their case on the statement as filed." The judge followed the rule that where the question of variance has been properly raised, the plaintiff has notice that requires him to elect either to amend or to stand on the statement as it was and, if he does not move to amend and stands on the proofs as they are, his contention must be adjudicated in the light of the rule that probata and allegata must be in agreement. See Kehres v. Steumpfle, 288 Pa. 534.

It is well settled that the statement of claim must be sufficiently explicit to enable the defendant to prepare his defense; that plaintiff cannot file a statement which avers one cause of action and be permitted on the trial to prove a different cause of action; and

that he must state the claim on which he will rely to recover so clearly and concisely that the defendant may be fully advised as to what he is called upon to meet: National Bank v. Lake Erie Asphalt & Block Co., 233 Pa. 421. The doctrine of variance requires a plaintiff to make out a case by proofs in substantial correspondence with the averments of the statement of claim: Chapman Co. v. Welsh, 90 Pa. Superior Ct. 225. But the allegations from which the proofs must not materially vary are those averments of fact contained in the plaintiff's statement of his cause of action which, if substantiated, would entitle him to recover. If the statement contain other allegations of fact not essential to the cause of action sued upon, the plaintiff is not bound to prove them, and failure to do so will not constitute a fatal variance which will preclude recovery if the essential averments have been duly established: Stegmaier v. Keystone Coal Co., 225 Pa. 221. A variance as to an immaterial matter is not fatal: Lederman v. Lazarus, 80 Pa. Superior Ct. 602. It must be substantial. In Freeman v. Pgh. Rys. Co., 301 Pa. 490, which was an action for damages alleged to have resulted from the negligent stopping of defendant's car at an unsafe place, the court below entered a non-suit on the ground that the testimony failed to sustain the allegations as to the manner of the happening of the accident as set forth in the plaintiff's statement of claim. In reversing Mr. Justice FRAZER, now Chief Justice FRAZER, speaking for the Supreme Court, said: "If the proof corresponds to the substance of the allegation, a variance is not established; in determining this question the entire pleadings and evidence must be considered and, if the latter substantially proves the former, a variance does not exist." If the statement of claim is sufficient to put defendant on notice of plaintiff's contention and in no manner tends to mislead defendant to its prejudice,

or affect the trial on the merits, the contention that there was a material variance between plaintiff's allegations and his proofs will not be sustained. Conceding for present purposes, but not deciding, that in the case at bar there is no proof that the person who sold the torpedoes to the minor plaintiff was a daughter of defendant, such lack of accord between the allegations and proofs is not substantial and was not prejudicial to defendant. The cause of plaintiff's injury as alleged in the statement of claim was the sale to him of a highly explosive torpedo by defendant's employee in violation of the statute. The allegation that the person who sold the torpedo was a daughter of defendant was not essential, and failure to prove it, if there was such a failure, did not constitute a fatal variance. It is of no consequence in the case whether the boy bought the torpedoes from defendant's daughter or from some other agent of defendant. For these reasons we are constrained to hold that it was error to enter judgment non obstante veredicto on the ground of variance between the allegations and the proofs.

Counsel for defendant contend, however, that plaintiff failed to prove that any agent, servant or employee of defendant made the sale of the torpedo. We cannot adopt that view. Rhuehanna Gray testified that on June 8, 1927, she went to defendant's store with the minor plaintiff; that the boy "put his three pennies up. She gave him those torpedoes. Q. After Patrick bought these torpedoes—who did you buy these from? A. It was a girl but I don't know *which one.* Q. Was she clerking in the store? A. She waited on us. Q. How many people were back of the counter at the time? A. Just the girl. Q. Would you know this girl if you would see her? A. No, I couldn't recognize her. Q. But it was a clerk in the store back of the counter. A. Yes." On cross-examination her testimony was as follows: "Q. Did either

one of these girls (referring to defendant's two daughters) sell you or give to Patrick Pierson the torpedoes that you speak of? A. I couldn't recognize them. Q. Didn't you say before that you didn't know? A. I didn't say. Q. Didn't you say 'No;' that you couldn't tell? A. I said 'No' I couldn't tell *which one* sold them to us. Q. What did you say this morning—did either one of these girls sell you any caps or torpedoes? A. I can't say.''

The minor plaintiff testified that when he went into the store there was one clerk behind the counter and that "it was some kind of a woman;" that he bought three torpedoes from her, like the ones offered in evidence. His cross-examination shows the following: "Q. Did this girl sell you the torpedo (pointing to one of defendant's daughters at the counsel table)? A. I don't know *which one*. Q. Did she sell you any? A. I don't know. Q. Did this girl (pointing to the other daughter?' A. I don't know *which one* sold me. Q. You can't point out any one who sold you torpedoes? A. No.''

With the record in this state in respect to the identity of the person who sold the torpedoes to the boy, plaintiff called the two daughters of defendant as his witnesses and also called defendant as on cross-examination. Defendant testified that he was absent from the store on June 8, 1927, and that his wife and two daughters conducted the store whenever he was absent, and that no one else had anything to do with the store in his absence, and that he had torpedoes in his store for sale. He refused to testify that he did not have in his store for sale torpedoes of the same kind as the one which caused the injury to the minor plaintiff. Defendant's two daughters testified, in answer to questions put by defendant's counsel on cross-examination, that they made no sale of torpedoes to the minor plaintiff at any time, but their

testimony as a whole clearly indicates that the statement that they sold no torpedoes to him meant only that they did not remember seeing the minor plaintiff in the store at any time. After a careful reading and consideration of the evidence, we are of one mind that it supports the finding which the jury must have made in reaching its verdict, that the torpedo which caused the injury to the boy was sold to him at defendant's store by one of defendant's agents who was in charge of the store at the time. And in our opinion the evidence would warrant a finding that the agent was one of the daughters. Both the boy and his girl companion testified that the mother did not make the sale.

The only other question argued before us is whether or not it was necessary for plaintiff to prove that the torpedo which caused the injury contained a ''dangerous and explosive substance'' within the meaning of those terms as used in the Act of 1881, supra. In our view there was no more reason for requiring plaintiff to prove that the torpedo contained a dangerous and explosive substance than there would have been if the thing which defendant sold him was a cartridge or gunpowder. It is a matter of common knowledge that all explosive torpedoes of the same general character as that which caused the loss of the boy's eye are contrivances which contain explosive and dangerous substances, and the courts will take judicial notice of that fact because it is a part of the common knowledge of every person of ordinary understanding and intelligence. Judicial notice is taken of what is within the knowledge of most men. The test has been said to be: Is the fact one of common every day knowledge, which every one of average intelligence and knowledge of things about him can be presumed to know? See 23 C. J. page 61, Sec. 1810, and cases there cited. On that principle the courts take

judicial notice that certain well known liquors are intoxicating drinks. See Jones on Evidence, 2nd Ed., page 142, and cases there cited. Courts will take judicial notice of the explosive nature of gunpowder, dynamite or the like. See 23 C. J. 144. We cannot suppose that any jury would be so ignorant as not to know that the torpedo such as that involved in this case is dangerous and explosive. Therefore, proof that the defendant sold such an explosive torpedo is proof that he sold a dangerous and explosive substance. One who knowingly and wilfully sells such a contrivance to a minor under sixteen years of age violates the statute and makes himself liable for any natural or probable harmful result which may follow in the wake of his wrongful act. See McMillen v. Steele, 275 Pa. 584; Shaffer v. Mowery, 265 Pa. 300. The statute was intended as a protection to minors under sixteen years of age who might become purchasers of the dangerous instrumentalities named. See Wassel v. Ludwig, 92 Pa. Superior Ct. 341, 347, in which the late Judge HENDERSON remarked that the statute "takes notice of youthful indiscretion and the propensity of children to be attracted by toys and devices dangerous to themselves and those with whom they may come in contact." The learned judge of the court below submitted the case on the theory that the mere sale of the explosive and dangerous contrivance to a minor under sixteen years of age rendered defendant liable for the natural and probable result of the sale. In so doing he followed the proper course.

The case was well tried by the learned judge and carefully submitted to the jury upon evidence which justified the verdict for the minor plaintiff. Appellee has shown no ground justifying the action of the court below in depriving the boy of the fruits thereof by the entry of judgment non obstante veredicto.

The judgment is reversed, with direction to enter it for plaintiff on the verdict.