## Mautino et al. *v.* Piercedale Supply Company, Appellant.

436

Argued March 20, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Edw. J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*A. R. McGrath,* with him *L. Pat. McGrath,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 6, 1940:

John Mautino, a minor, his mother, Catherine Ghea and his step-father, Dalmiro Ghea, appellees, instituted an action in trespass against the appellant, Piercedale Supply Co., whose employee, it was alleged, sold to Gail Nix, a boy under sixteen years of age, in violation of section 1 of the Act of June 10, 1881, P. L. 111, the cartridge with which he inflicted serious injury upon the minor appellee. The trial resulted in a verdict awarding the minor appellee the sum of $3,478.26 and awarding the Gheas the sum of $1,685.50, including $685.50 medical and hospital expenses. The Supply Company appeals from judgments entered in accordance with the verdict of the jury, assigning for error the refusal by the court below of its motions for judgment non obstante veredicto and for a new trial.

Appellant concedes that the sale of any cartridge, gunpowder or other dangerous and explosive substance to a person under sixteen years of age in violation of the Act of 1881 is negligence per se, and renders the seller liable for any natural or probable harmful result which might follow in the wake of his wrongful act. The Act, this Court said in *McMillen v. Steele*, 275 Pa. 584, 587-588, "substitutes, for the proof necessary to show lack of capacity [under the common law principles which would otherwise apply], the hard and fast rule of sixteen years of age. Children under that age have been legislatively declared utterly unfit to handle firearms. The negligent act is solely referable to the unlawful sale to a minor under sixteen . . . and as affecting the minor purchaser's right of recovery or that of any one injured by him . . . the minor's negligence . . . is not material. The storekeeper-seller cannot escape responsibility by reason of the negligence of the boy to whom he sells." See also *Shaffer v. Mowery*, 265 Pa. 300, 303; *Wassel v. Ludwig*, 92 Pa. Superior Ct. 341, 346; *Pierson v. London*, 102 Pa. Superior Ct. 176, 183. But, appellant contends that the minor appellee's

injury was not a natural or probable consequence of its alleged unlawful sale.

It appears from the evidence that prior to the purchase of the cartridges the boy, Nix, had arranged with a friend for the furnishing of a gun but that boy was unable to provide it when, having procured the cartridges, Nix called upon him to perform. Thereupon Nix arranged with another boy, one Albert Bentz, to procure a gun belonging to the latter's older brother and which had been loaned to one Rudy Valencia, whose age does not appear. Accordingly, on January 4, 1938, several days after the purchase of the cartridges, the two boys went to the Valencia home where they procured the gun from Valencia, apparently upon the pretense that they had been sent for the purpose of returning it to the Bentz home. Having thus procured the gun, the boys did some shooting in the open in the afternoon after which they returned the gun to the Bentz home. After dinner that same evening, between half past seven and eight o'clock, Nix went to the Bentz home, the two boys went upstairs, "took down the gun," and discharged six bullets out of an upstairs window into and about the door of the home of the minor appellee, John Mautino, 300 to 350 feet away, one of which the jury found struck Mautino, causing the injury for which appellant has been held liable. Appellant argues: "The mere selling of the cartridges did not affect plaintiff in any way. They were entirely passive with potentialities for injury only (sic) when used in connection with the subsequent agency of a gun . . . Without the independent negligence of Rudy Valencia in turning over the gun, the injury to plaintiff could not have happened; and that subsequent act became the proximate cause of the injury, and eliminates all prior or remote conditions which made that injury possible."

Appellant relies for this contention principally upon *Shaffer v. Mowery,* supra, wherein, at 303, appears the following: "Of course, if plaintiffs, or either of them

(*Darbrinsky v. Penna. Co.,* 248 Pa. 503, 505; *Johnson v. Reading City, etc., Ry. Co.,* 160 Pa. 647; *Gress v. P. & R. Ry. Co.,* 228 Pa. 482, 486), expressly or negligently permitted their young offspring to handle deadly weapons, of such a kind, in such a manner and under such circumstances as to make a parent legally liable for any harmful result which might ensue to others (*Archibald v. Jewell,* 70 Pa. Superior Ct. 247; *Meers v. McDowell,* 110 Ky. 926, 929; *Johnson v. Glidden,* 11 S. D. 237, 241; *Dixon v. Bell,* 5 M. & S. 198, 199; *Palm v. Ivorson,* 117 Ill. App. 535, 536), they could not recover; for the law would view them as having so far intervened in bringing about the harmful result of which they themselves complain as to assume or be fixed with the risk thereof: *Carter v. Towne,* 103 Mass. 507, 508; and, see discussion in *Davidson v. Nichol,* 11 Allen 514, 519."

The Shaffer case does not support appellant's position, as analysis will show. It was there decided merely that if the parent-plaintiffs in that case were negligent, they could not recover, as a matter of law, and that the question of their negligence was for the jury in view of evidence of knowledge concerning their son's possession and use of the gun by which the previously purchased cartridges were accidently discharged, killing another son. Applying that decision to the facts of the present case, negligence on the part of Valencia would require that he be regarded as having "so far intervened in bringing about the harmful result . . . as to assume or to be fixed with the risk thereof" in an action by him, had he, rather than a stranger to the transaction, in the position of minor appellee, sustained the injury, and his negligence would be a question for the jury. For purposes of the present case, however, whether or not Valencia's conduct constituted negligence is immaterial, as the court below properly held.

Assuming that Valencia was negligent in delivering the unloaded gun to the boys, Nix and Bentz, it would not relieve appellant from legal responsibility for minor

appellee's injury. Intervening human action, whether innocent or negligent, is not a superseding cause of harm which an actor's conduct is a substantial factor in bringing about, if such action ought to have been foreseen *(Nelson v. Duquesne Light Co. et al.,* 338 Pa. 37, Restatement of Torts, Section 447). Appellant cannot be heard to say that it was not reasonably to be anticipated by it that some third person might, either prior or subsequent to the unlawful sale of cartridges, inadvertently make possible the acquisition of that which was obviously requisite to the discharge thereof in the customary and usual way, and thus relieve itself from all responsibility for injuries resulting from such discharge either to the purchasing minor or an innocent third person. To hold otherwise would be to permit the evasion of liability by reason of an act of another, the very likelihood of the occurrence of which was one of the risks which made appellant's conduct dangerous, and a risk which it must be presumed the legislature, in making such sales unlawful, intended that purchasing minors and innocent third persons should be protected against. See Restatement of Torts, Section 449, and Penna. Anno. thereto, citing, inter alia, *Shaffer v. Mowery, McMillen v. Steele* and *Wassel v. Ludwig,* supra. As was said in *McMillen v. Steele,* supra, at 588, "the Act is drastic and intends to put a stop to such sales by imposing an unusual responsibility on the seller." In the absence of evidence that at the time he delivered the gun to the boys Valencia knew of the prior purchase of the cartridges or of their possession by the boys, and there is none in the case, the court below committed no reversible error in deciding, as a matter of law, that appellant's alleged negligence would be a proximate cause of minor appellee's injury. Cf. *Kline v. Moyer,* 325 Pa. 357, 364; *Dooley et al. v. Charleroi Borough,* 328 Pa. 57, 61; *Dominices v. Mon. R. R. Co.,* 328 Pa. 203, 210.

The remaining grounds assigned by appellant as warranting judgment in its favor, non obstante veredicto

for appellees, are likewise untenable. The contention that the sale of cartridges to the minor Nix, being in violation of instructions not to make such sales to persons under 21 years of age, is not chargeable to appellant, is squarely ruled against it in *McMillen v. Steele*, supra. This Court there said, in answer to a similar contention by the appellant in that case, at 587: "Defendant is responsible for the acts of his servant done within the scope of authority, as in other actions of like nature, where the relation of principal and agent exists . . . Where the sale is made in the ordinary course of business, it is immaterial whether the clerk or the owner sells the weapon. A principal is liable in damages because of the criminal acts of his agent, where such acts are within the scope of the agent's employment: 26 Cyc. 1529; A. & E. Enc. of Law, 2d edition, Vol. 20, 176. See also *Faiola v. Calderone*, 275 Pa. 303." "A master cannot avoid responsibility for the negligence of a servant by telling him to act carefully. He cannot limit the servant to the pound of flesh and direct him not to spill blood": Restatement of Agency, Section 230, Comment (b). See also *Pierson v. London*, supra.

Appellant contends finally that judgment should be entered because the verdict depends for its support upon evidence which is shown to be untrue by "incontrovertible physical evidence." The evidence consisted of an X-ray photograph which appellant was permitted to introduce for the purpose of showing that the bullet which entered minor appellee's body and which is still lodged therein, in the region of the sacro-iliac joint of his spine, was not a ".22 short," the type of bullet allegedly purchased from appellant's store and admittedly the only type that could be discharged from the gun with which the boy Nix did his shooting, but rather a ".32" bullet. The picture was made up by placing the retrieved lead portions of a ".32" bullet and a ".22 short" bullet, previously discharged into a bale of cotton, upon the X-ray film plate, under the body of minor appellee, so as to

enable the making of a finished picture showing these bullets, thus photographed through the body, as well as the bullet lodged within the body.

This photograph is at best but the result of an experiment, the propriety of admitting which into evidence is highly doubtful by reason of the manifest differences between the conditions under which the bullets photographed through the body were discharged and photographed, and those which attended the discharge and photographing of the bullet lodged within minor appellee's body. Cf. *Snowiss v. Insurance Co. of Newark,* 322 Pa. 161. Clearly this evidence cannot be brought within the incontrovertible physical facts rule, a rule which has application only in the clearest of cases *(Bailey v. C. Lewis Lavine, Inc.,* 302 Pa. 273; *Keck v. Phila. Rapid Transit Co.,* 314 Pa. 389), and never where, as here, there are variables and doubtful estimates *(Rex v. Lehigh Valley Transit Co.,* 330 Pa. 275, 279), and where the testimony of witnesses is needed in order to apply the evidence to the issue *(Pfeffer et al. v. Johnstown,* 287 Pa. 370, 375; *Scalet v. Bell Telephone Co. of Pa.,* 291 Pa. 451, 456). Significantly, appellant's ballistic expert, under whose direction the experiments were conducted, refused to testify the photograph indicated "positively" that the bullet lodged within minor appellee's body was not a ".22 short." His testimony was as follows: "As to whether the one in the center to say positively is not a twenty-two, I would say it is a larger object than a twenty-two calibre bullet and compares quite closely in size to the thirty-eight (later changed to thirty-two) but not quite." He further testified that discharging bullets into wood rather than cotton would destroy the size, and admitted that if the bullet in minor appellee's body "had struck something," such as bone, the spent bullet might take on a different form. The court below properly held that whether or not the bullet which entered the body of the minor appellee was one purchased from appellant's store and

whether or not it was fired from the gun discharged by
the boy Nix in minor appellee's direction, at the very
moment the latter was struck, were questions for the
jury under all the evidence.

In so far as the motion for a new trial is predicated
upon the same grounds as were assigned in support of
appellant's motion for judgment, it follows from what
has already been said that this motion was likewise
properly refused. Additional grounds were asserted by
appellant in support of the motion for new trial, but
as they have not been seriously pressed, there is no need
to discuss them. We have carefully considered the en-
tire record and are of the unanimous opinion that the
case is wholly free of reversible error.

The action of the court below in refusing appellant's
motions for judgment and for a new trial and in enter-
ing judgments in accordance with the verdict is af-
firmed.