Malitovsky *v.* Harshaw Chemical Company et al., Appellants.

Argued September 30, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Samuel W. Pringle,* with him *Bruce R. Martin* and *Dalzell, McFall, Pringle & Bredin,* for Harshaw Chemical Company, appellant.

*D. H. McConnell,* for Wilson Freight Forwarding Company, appellant.

*Coleman Harrison,* for appellee.

Opinion by Mr. Justice Allen M. Stearne, November 8, 1948:

These are separate appeals by defendants, Wilson Freight Forwarding Company (hereinafter called carrier) and Harshaw Chemical Company (hereinafter called chemical company) from the refusal of the court below to grant motions for judgment for defendants n. o. v. and for a new trial in an action of trespass in which a jury rendered a joint verdict in favor of the plaintiff against both defendants.

The chemical company of Cleveland, Ohio, sold 20 drums of hydrofluoric acid to the Armstrong Cork Company. 20 steel drums of this acid were shipped f. o. b. Cleveland, Ohio, to the Armstrong Cork Company's plant at Millville, New Jersey, on October 8, 1942. Both the chemical company and the carrier were aware that they were dealing with a dangerous chemical. On October 9, 1942, while the shipment was en route, the Armstrong Company cancelled the order and the cancellation was accepted by the chemical company. When the shipment arrived at the Millville plant of Armstrong, *upon the chemical company's orders,* the truck was not unloaded but was directed to return to Cleveland. While still en route the 20 drums arrived at the carrier's terminal at Pittsburgh sometime between October 16 and 18, 1942. While the drums were being transferred from one truck to another, an employe of the carrier discovered a "pin hole leak" in one of the drums, which was thereupon immediately separated from the others and placed on the carrier's dock or platform. The remaining 19 drums were delivered to the chemical company in Cleveland. Plaintiff was engaged in the cooperage business in Pittsburgh in a building adjoining the premises occupied by the carrier. Both the plaintiff and the carrier used a common areaway between the two premises. After the defective drum had remained for sometime on the carrier's dock or platform, one of the carrier's employes, disturbed by fumes being emitted from the drum, moved

the drum to the common areaway and placed it against plaintiff's building, where it remained for at least two months before the accident. On June 4, 1943 (nearly eight months after the defective drum was left on the carrier's premises), the carrier wrote to the chemical company requesting it to "make some disposition" of the defective drum. In the chemical company's reply, on June 14th, it failed to order any disposition of it. Apparently the chemical company had credited Armstrong Company with the return of 19 drums of acid and regarded the defective drum as the property of Armstrong with which the chemical company had no further concern. On June 22, 1942, plaintiff, desiring to use the space in the areaway, took hold of the drum, which was lying on its side, and rolled it towards himself. The acid had meantime eaten a large hole where the "pin hole leak" had started but which hole was not noticeable when the drum was lying on its side. The acid splashed out of the hole in the drum causing serious injury to the plaintiff.

The carrier was negligent in knowingly permitting a *defective drum* containing highly dangerous acid to lie in the common areaway without notice to plaintiff. The chemical company was also negligent in delivering acid in a defective drum—one which was not properly insulated to protect the inside of the drum against the action of this dangerous acid. The chemical company did nothing to ascertain the whereabouts of the 20th drum, after the other 19 drums had been returned to it, following its agreement to cancel the whole of the 20 drum order. Furthermore, after notice on June 4th that the defective leaking barrel of acid had been at the carrier's place of business nearly eight months, no effort was made by the chemical company to dispose of it.

Under the facts the negligence of the carrier was clearly for the jury. It was shown that the carrier was fully aware that it was transporting hydrofluoric acid and that acid of that nature was a most dangerous substance. The carrier knew that the drum had sprung a

leak. It also knew, or ought to have known, that escaping acid might cause serious injury. The liability of the chemical company was also for the jury. The chemical company was aware of the dangerous character of the chemical which it was delivering to its customer. It was required to use every reasonable precaution to protect others against injury from coming in contact with such a product. As was said in *Fredericks v. Atlantic Refining Co.*, 282 Pa. 8, 13, 127 A. 615, "A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business, which involve little or no risk. No absolute standard can be fixed by law, but every reasonable precaution suggested by experience and the known danger ought to be taken": see also: *Konchar v. Cebular*, 333 Pa. 499, 3 A. 2d 913; *Summit Hotel Company v. National Broadcasting Company*, 336 Pa. 182, 8 A. 2d 302; *Maternia v. Pennsylvania Railroad Company*, 358 Pa. 149, 56 A. 2d 233.

Appellants contend that plaintiff was guilty of contributory negligence as matter of law. With this we cannot agree. Ordinarily, the question of contributory negligence is for the jury. It is only in those cases where contributory negligence is so clearly revealed that fair and reasonable individuals would not disagree as to its existence that it may be declared judicially. *Altomari v. Kruger et al.*, 325 Pa. 235, 188 A. 828. See also: *Pessolano et ux. v. Philadelphia Transportation Co.*, 349 Pa. 73, 36 A. 2d 497; *DiBona, Admr., v. Philadelphia Transportation Company*, 356 Pa. 204, 51 A. 2d 768, and cases therein cited. Here the plaintiff was unaware, and had no reason to know, that this was a defective drum containing dangerous acid. The court properly submitted the question of the plaintiff's contributory negligence to the jury.

The chemical company contends that even if it was negligent, such negligence was not the proximate cause of plaintiff's injuries. This requires an inquiry as to whether the negligent act of the carrier was such an

intervening act as to constitute it the proximate cause of plaintiff's injury. Ordinarily, it is for the jury to determine whose negligence, of several persons contributing to the injury, was the proximate cause: *Helmick v. South Union Township,* 323 Pa. 433, 185 A. 609. Section 447 of the Restatement of Torts, cited with approval by this Court in *Nelson v. Duquesne Light Company et al.,* 338 Pa. 37, 53, 54, 12 A. 2d 299, states: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about. . . ." See also: *Kline v. Moyer,* 325 Pa. 357, 364, 191 A. 43; *Mautino v. Piercedale Supply Company,* 338 Pa. 435, 13 A. 2d 51.

It cannot be said as matter of law that the negligence of the chemical company was *not* the proximate cause of plaintiff's injury. The jury was justified in finding that the chemical company could have foreseen the consequence of its negligence. The mere fact that the chemical company could not anticipate this *particular injury* to this *particular plaintiff* is of no consequence. "The question whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from those acts or omissions is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty;" *Bisson v. John B. Kelly, Incorporated,* 314 Pa. 99, 110, 170 A. 139; *Saganowich et al. v. Hachikian,* 348 Pa. 313, 35 A. 2d 343. The jury was justified in finding that the negligent acts of *both* defendants were contributing causes and proximate factors in the happening of this accident which imposes liability upon *both* of them.

We find no merit in the other assignments of error. The learned court below properly admitted the expert testimony sought to be excluded by appellants: Wigmore on Evidence, 3d Ed., Vol. 2, sec. 682, p. 810. No trial

errors are disclosed in the record. As there was no manifest abuse of discretion the motion for a new trial was properly refused. *Nicholson v. Feagley,* 339 Pa. 313, 14 A. 2d 122; *Cox v. Scarazzo,* 353 Pa. 15, 44 A. 2d 294.

Judgment affirmed.