Vitali *v.* Bankers Securities Corporation,
Appellant.

Argued November 12, 1959.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE,
JJ.

*Ralph S. Croskey,* for appellant.

*David H. Kubert,* with him *Martin R. Fountain,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, January 18, 1960:

Mothers with infants of a tender age are hindered in shopping because they cannot very well carry babies in their arms and still perform freely the arduous task of examining, selecting, and finally purchasing desired articles in the crowded bargain marts. Some department stores have met this difficulty by installing in their establishments little perambulators known as "baby strollers." The baby stroller involved in this case was a small four-wheeled vehicle with canvas seat and back, from which extended a vertical arm or shaft topped by a horizontal wooden handle by means of which the mother pushed or pulled the carriage.

On February 22, 1956, Mrs. Eleanor Vitali, accompanied by her 12-year-old niece, Judith Doyle, entered the Snellenburg Department Store in Philadelphia, with her two babies, Bernadette, three years of age, and Nancy, one year of age. On the ground floor of the establishment, Mrs. Vitali was supplied by an employee of the store with two of the designated baby strollers. In one she placed Nancy and assigned it to her niece. In the other she put Bernadette and retained it herself.

After five minutes of strolling around on the ground floor, Mrs. Vitali headed for the basement for the bargains invariably associated with subterranean levels of department stores. The basement was reached via a stairway. Judith pushed her stroller down eight steps

to the landing without difficulty or mishap. When, however, Mrs. Vitali reached a point about seven or eight inches from the edge of the top step of the stairway, the handle of her baby stroller pulled loose from the shaft and the carriage shot down the stairway, colliding at the landing with Nancy's stroller. Both babies were thrown out and to the concrete landing. Nancy was injured slightly but Bernadette sustained a skull fracture.

Trespass action on behalf of the children and their parents was entered against the owner of the department store and the jury returned a verdict in favor of Bernadette in the sum of $8,000 and in favor of Nancy in the sum of $200. The jury awarded nothing to the parents. The defendant store moved for judgment n.o.v. on three grounds: (1) that the incontrovertible physical facts doctrine overcame the plaintiff-mother's story of the accident, (2) that if there was a latent defect in the stroller device, the burden was on the plaintiffs to prove that the defendant could or should have discovered it by inspection; and (3) "the alleged negligence of the store was insulated from the baby plaintiff because of the intervening negligence of the mother-plaintiff."

1.

During the trial the defendant's lawyer produced in court a handle similar to the one used on the ill-fated stroller of February 22nd and asked Mrs. Vitali to take hold of it, which she did. He then took a firm grasp on the shaft to which the handle was attached and asked Mrs. Vitali to pull away from him, which she also did. In front of the jury box, counsel and plaintiff then engaged in a tug of war for the purpose of determining whether the handle would pull loose from the shaft. The contest ended in a dead heat, even though counsel pulled with such force that he feared he might fall if he strained further. Since the handle did not detach from the shaft during the contest, de-

fendant's counsel now argues that the handle could not have separated from the shaft of the Bernadette stroller on February 22nd. In spite of this argumentation, however, the fact is that the handle *did* come off on February 22nd.

The handle was attached to the shaft by means of a bolt screw 1¾″ long and ⅜″ in diameter, with its flanged threads rising ⅜″. Appellant's counsel says in his brief that "a ⅜″ thread could never come apart unless it was so loose that the defect would be obvious," unless, of course, counsel adds, "the thread was completely worn out." Since the bolt did not pull loose at the time of the contest, defendant's counsel contends that this proves the thread was in good condition on the day of the accident. But this argument overlooks a very self-evident proposition. A device may give way at a certain moment and yet have been intact the moment before the mishap. There is always that last instant just before the cable parts, the rope breaks, the wheel collapses and the boiler bursts, when everything seems to be all right. A proper inspection, however, of the cable, rope, wheel or boiler, would show that it was on the verge of dissolution.

It could well be that the bolt between the handle and the shaft was hanging on to its life by a mere thread when Mrs. Vitali received the baby stroller from the department store and that it gave up the ghost just at the instant the stroller reached the head of the stairway, down which it plunged to Bernadette's grave injury. The question this case presents is: Whose duty was it to discover the defect in the bolt, if that was the cause of the mishap?

Mrs. Vitali could not have seen the threads on the bolt unless she removed the handle. Certainly she had no duty to do this. She had the right to assume that the equipment supplied to her by the defendant store was in reasonably safe condition. The baby strollers available to the customers of the defendant store were

not mere gratuities; they were part of the service supplied by the store as an inducement to customers to patronize their establishment. Mrs. Vitali was a business visitor of the defendant store and, therefore, entitled to the due care which goes with such a relationship.

The argument of defendant's counsel based on the tug of war test in the courtroom is nugatory for an even greater reason than that which has so far been stated. The handle over which counsel and plaintiff struggled was not the handle which was attached to the runaway stroller of February 22, 1956. The stroller involved in the accident was not produced in court. Although the testing handle was similar in design to the one attached to the fateful perambulator, it was not proved that it was in the same condition as the one which came off in Mrs. Vitali's grasp.

In attempting to apply the incontrovertible physical facts rule to the facts in this case, it is argued on behalf of the defendant that "handles screwed on with such bolts as were used here, just don't come off." The answer, of course, to this statement, as already mentioned, is that the handle did come off. Hence, the incontrovertible physical facts rule cannot possibly apply. Incontrovertible is a powerful word and is not to be tossed about freely. The vastness of the Atlantic is incontrovertible, the violence of a cyclone is incontrovertible, the ferocity of a tiger is incontrovertible, but the facts which go to make up an accident involving human recollection, estimates and sequence of events may well be controverted, as they were in the case.[1] Whether the handle detached from the stroller,

---

[1] "Clearly this evidence cannot be brought within the incontrovertible physical facts rule, a rule which has application only in the clearest of cases . . . and never where, as here, there are variables and doubtful estimates, . . . and where the testimony of witnesses is needed in order to apply the evidence to the issue." (*Mautino v. Piercedale*, 338 Pa. 435, 442)

as described by Mrs. Vitali and her niece, or whether it separated because of invisible, mysterious forces, as vaguely speculated on by the defendant, was a question of fact for the jury to decide, which it did, and we do not see that it erred.

2.

The defendant says further: "A store is not required to 'push and pull' every baby stroller around 5 minutes every day to discover any latent defect." The law does not specify how long a store owner must test any given device each day in order to determine whether it is in safe condition. It does, however, impose on the store owner, who invites mothers and children into its establishment for the purpose of selling them commodities, the obligation not to injure them through the lack of due care. The very nature of the device here involved was one which called for particular care. The baby stroller was to be used and could only be used for infants of that delicate age which, in the face of violence or disorder, renders them as helpless as leaves in a storm. The store owner was charged with knowledge of the tender wards who were to be assigned to their baby strollers and therefore should have had the strollers examined at such intervals as would assure their users of bodily solidity and mechanical integrity.

Did the defendant conduct such examination? Did it conduct *any* examination of these baby perambulators? At the trial it produced no evidence on that subject. Nor did it call any mechanical expert to demonstrate or explain that the handle could not have separated from the shaft in the manner described by the mother-plaintiff. The defendant has presented its case entirely on academic theorizing because the demonstration in court between defendant's counsel and the plaintiff was a forensic performance and not an evidentiary test. In any event, the jury appraised its potentialities and returned a verdict for the plaintiffs, and we cannot say that it erred in doing so.

Did the defendant in this case show that it exercised due care to prevent the falling apart of the baby carriage? The jury answered in the negative, and it is not apparent from a reading of the record that the jury lacked perspicacity, reason, or fairness, in coming to that conclusion.

**3.**

Finally it is argued by the defendant that it is entitled to judgment n.o.v. on the theory that the plaintiff mother was negligent in using the stroller. However, this argument, in order to be entitled to any weight whatsoever, would have to be based on the proposition that the mother *knew* the stroller was defective. The record is barren of any such knowledge. In the absence of any objective proof that the stroller was patently defective when Mrs. Vitali placed her child in it, and in the absence of any evidence that she used the stroller negligently, there cannot be imputed to her any fault which would deny to her child a recovery under the facts established at the trial. In addition, lacking any evidence that the mother was at fault, there would be present the presumption that a mother would be solicitous, devoted, cautious and alert in protecting the well-being of her three-year-old baby.

Nor can it be said that if the defendant was charged with knowledge of a defect in the stroller, it still would not be liable in damages to the injured person on the theory that Mrs. Vitali's intervention was that of an independent agent.[2] The defendant would be absolved

---

[2] " 'If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time.' " (*Thomas v. Southern Pa. Traction Co.*, 270 Pa. 146, 148.)

from liability in such a case only where the intervention was one which was not foreseeable. Mrs. Vitali's intervention was not only foreseeable, it was specifically provided for by the defendant itself.

There is nothing in the record which can give any possible support to the defendant's supposition that, by not awarding damages to Mrs. Vitali herself, the jury found "negligence in using the stroller with an unsafe condition existing with respect to the handle."

Judgment affirmed.