## Kotch v. Pennsylvania Power Company

*John Q. Stranahan*, for plaintiff.

*Martin E. Cusick, David K. Lewis, Jr.,* and *Philip E. Brockway*, for defendants.

McKAY, J., September 28, 1962.—This case is before the court upon preliminary objections in the nature of demurrers, filed by each of the three defendants. The facts as pleaded in the complaint are as follows:

The Leesburg-Brent Road is a two-lane blacktopped public highway in Springfield Township, Mercer County, which runs generally in an east-west direction. Along both sides of the highway, outside of the right of way of the highway, are electric poles which have been erected by the Pennsylvania Power Company, a distributor of electricity. On March 7, 1961, one of the poles on the south side of the road was supported by a steel guy wire, affixed to the top of the pole and running north across the highway where it was affixed to the top of another utility pole. From the latter pole the guy wire ran at an angle to the ground north of the pole and was embedded in the earth.

On the above mentioned date, at about 11:30 a.m., defendant Holmes, while operating his automobile eastwardly on the highway near the Robert Munnell farm at a high and reckless rate of speed, lost control of his car, whereupon the car left the road and struck the utility pole on the north side of the highway with such force that the pole broke off and fell over, and the guy wire above described fell and sagged over the highway. At this time, plaintiff, a township police officer who was standing nearby, proceeded to the scene of the accident, parked his car on the berm south of the highway facing eastwardly and walked to the north side of the highway near the point where the guy wire was embedded in the earth.

While plaintiff was standing at that point, an automobile operated by defendant Dodd, proceeding west-

wardly on the highway, approached the sagging guy wire which extended across the road in its path, and without reducing its speed, struck the wire and caused the end of the wire embedded in the ground to break loose and strike plaintiff's left leg with such force as to fracture his leg and otherwise injure him severely. While the Dodd car was approaching the wire, defendant Holmes was in a position, or should have been in a position, to warn plaintiff, whose back was turned, so that he could not see the approaching car, but failed to do so.

The preliminary objections of the Pennsylvania Power Company aver that the complaint does not allege facts showing the company to have been negligent, and, by amendment allowed at oral argument, that the facts do not indicate that the power company's negligence, if any, was the proximate cause of the accident, and instead show that the intervening negligent acts of Dodd and Holmes superseded the power company's negligence, if such negligence existed.

As to the question of negligence, the complaint alleges that the power company was negligent in that it created a dangerous condition by constructing the guy wire across the highway to support its poles instead of using a push brace type of support which was available to it. It avers that by using the guy wire construction instead of the alternative suggested, the guy wire would necessarily sag across the highway when either of the two poles to which it was attached was broken.

The power company contends that it is not negligence on its part to support its poles by the use of the guy wire stretched across the highway; that this method of supporting poles is used generally by utility companies and that it creates no danger whatever.

If we were called upon to decide the question as a general proposition whether the mere use of the guy wire method of supporting its poles is an act of negli-

gence on the part of a utility company, without more information than we now have, we would be reluctant to hold that it is. However, in the face of plaintiff's averment that other methods of support are equally available and are less dangerous, in our judgment, the case requires the production of evidence and we would not be waranted in disposing of it at the demurrer stage of the pleadings.

The question of the power company's negligence, under the facts pleaded in this complaint, however, is not so easily disposed of. There remains another and more fundamental question whether the power company owed any duty at all to this plaintiff to exercise due care in adopting a safe method of supporting its poles.

It must be remembered that to constitute negligence in a legal sense, not only must there be a lack of due care, but such lack of care must involve a breach of some duty *owed to the person who is injured*. It is the law that where, under the circumstances of a case, a duty to take care arises, such duty is not owed to the world in the abstract, but is owed only to the person or class of persons who are within the foreseeable orbit of risk of harm from the actor's conduct. As to those not within such foreseeable orbit, no duty is owed: 38 Am. Jur. 660, Negligence, §§ 18, 19.

"In either event, all liability for negligence rests upon a reasonable duty to foresee the likelihood of the happening of an injury apt to result from one's act. Thus, even though foreseeability has no place in the consideration of proximate or legal cause, it is an element to be considered in determining the existence of negligence.

"Conduct is negligent only if the harmful consequences of such conduct could reasonably have been foreseen and prevented by the exercise of reasonable

care. Or, to put it another way, the test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm resulting from his act. . . .

"In other words, the general rule is that one is answerable for the natural and probable consequences of his fault, that is those consequences which could have been foreseen by ordinary forecast, but one is not presumed to contemplate the coincidence of events which have no probable or natural connection in the mind, and which cannot, by ordinary thoughtfulness, be foreseen as likely to happen in the consequence of the act in which one is engaged": 27 P. L. Encyc., Negligence, § 5.

As was said by Justice Cardozo in Palsgraf v. Long Island R. Co., 248 N. Y. 339, 162 N. E. 99, cited with approval in Dahlstrom v. Shrum, 368 Pa. 423: "The orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of duty."[1]

In the Dahlstrom case, an automobile operated by defendant struck a passenger who had alighted from a bus, hurling the body of the passenger against a second passenger back of him but not visible to defendant. In an action by plaintiff to recover damages for the injuries so sustained, the lower court granted a non-suit for want of evidence of negligence which was affirmed on appeal. In its opinion, the court stated at page 425:

"The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act: Scurfield v. Federal Laboratories, Inc., 335 Pa. 145,

---

[1] Restatement, Torts, §281, states in comment on clause (b): *"Risk to class of which Plaintiff is member.* If the actor's conduct creates a recognizable risk of harm only to a particular class of persons, the fact that it causes harm to a person of a different class, to whom the actor could not have reasonably anticipated injury, does not render the actor liable to the person so injured."

6 A. 2d 559 . . . Defendant owed a duty to refrain from injuring persons by an unreasonable or careless use of his automobile. But he owed that duty solely to those whom a reasonable man could foresee he might injure by a particular use of this automobile which, in this case, he was driving at thirty-five miles per hour, passing a vehicle with three small lights above his headlights. Was *plaintiff* within that group of people to whom a reasonable man could foresee an injury under these circumstances? We think not . . . [page 428]. Plaintiff was clearly outside the orbit of risk and therefore no right of plaintiff was invaded and defendant breached no duty which he owed to plaintiff."

The same test is applied in the earlier case of Joseph Wood v. Pennsylvania Railroad Company, 177 Pa. 306. In that case a train struck and killed a woman at a grade crossing, her body was hurled through the air and hit plaintiff who was sitting in the station to board another train. The court held that the accident which caused plaintiff's injury was not probable and hence was not foreseeable. It stated at page 311: "Clearly, it was not the natural and probable consequences of its neglect to give warning, and therefore not one which it was bound to foresee."

In our opinion, the above principle rules the instant case. Even if it were to be established that supporting its poles by stretching a guy wire across a highway from one pole to another and then to the ground was not a reasonably safe method for the power company to follow, the company owed no duty to this plaintiff to adopt any safer method. It clearly was not foreseeable by the power company that this plaintiff would be injured if an automobile would leave the highway, strike one of the poles, cause the wire to sag across the road, and that another driver approaching the scene from the opposite direction would drive an automobile

into the sagging guy wire with such force as to jerk it from the ground near where the plaintiff was standing and cause it to strike the latter's leg. Having no duty to foresee so unlikely a result of its conduct, the power company was not negligent as to this plaintiff for he was, in Justice Cardozo's words, without the "orbit of the danger as disclosed to the eye of reasonable vigilance."

The power company further contends that its alleged negligent act was not a proximate cause of the plaintiff's injury under the facts set forth in plaintiff's complaint.

While, as we have indicated, the question before us is logically one of negligence rather than one of causation, and we have decided it on that basis, we are aware that both the Restatement and our Supreme Court have, somewhat inconsistently at times, treated questions of this sort as belonging to the latter category,[2]

---

[2] In this opinion in the Dahlstrom case, supra, the Supreme Court took a strong position that the element of foreseeability belonged in the negligence and not in the causation field. At page 428-29, it stated: "We are in accord with the doctrine that foreseeability has no place when we are considering proximate or legal causes. Foreseeability, however, is an element, as above indicated, when the question of negligence is being considered." The court cited Shipley v. Pittsburgh, 321 Pa. 494, and Mankins v. Mack, 364 Pa. 417, as instances where they had applied the rule that foreseeability is not considered in connection with proximate cause. Nevertheless, as we indicate in this opinion, the court has ignored this position in many instances without referring to it. See also Leoni v. Reinhard, 327 Pa. 391; Venzel v. Valley Camp Coal Co., 304 Pa. 583; Rugart v. Keebler-Weyl Baking Co., 277 Pa. 408; Hoag & Alger v. Lake Shore and Michigan Southern Railroad Co., 85 Pa. 293; Bruggeman v. City of York, 259 Pa. 94; Kosson v. West Penn Power Co., 293 Pa. 131; Nirdlinger v. American District Telegraph Company, 245 Pa. 453. In the Leoni case, supra, the court, after discussing at length the lack of negligence due to unforeseeability of the accident, concluded with a paragraph apparently basing its decision also upon lack of proximate cause, quoting from the Nirdlinger case at page 460 (p. 394):

particularly where, as in the instant case, the negligent act of a subsequent actor precipitates the plaintiff's injury.

For example, the Restatement, in dealing with causation, lists among the factors to be considered in determining whether an actor's conduct is a substantial factor (proximate cause) in bringing about harm to another, "whether after the event and looking back from the harm to the actor's negligent conduct it appears highly extraordinary that it should have brought about the harm": § 433 (b). Also in §435, entitled "Foreseeability of Harm or Manner of Its Occurrence", paragraph 2 (1948 Supplement), it states: "The actor's conduct is not a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."[3]

Similarly, our Supreme Court, in cases of this type, has ignored the position taken by it in the Dahlstrom case, supra, and has treated the question of foresee-

---

" 'Where, however, the chain is so broken that the events and facts become independent of each other, then the result cannot be said to be the natural and probable consequence of the primary cause. . . . The law regards those consequences as remote, and therefore not actionable which are produced by the intervention of human agency, or the voluntary act of a person over whom the defendant has no control, and his act no influence.' "

[3] The draftsmen of the Restatement recognize as we do that the question of foreseeability should logically be treated as one of negligence, but faced with the fact that many courts, whether logically or not, have actually treated foreseeability as belonging to causation, have accepted the inevitable and drafted the Restatement accordingly. Hence, in the comment on subsection (2), 1948 Supplement, page 737, they state: "Strictly the problem before the court is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm from the hazard in question . . . However, courts frequently treat such problems as problems of causation . . ."

ability as purely one of causation. Thus, in Hendricks v. Pyramid Motor Freight Corporation, 328 Pa. 570, plaintiff's decedent drove a truck onto a ferry boat at Philadelphia to be transported to Camden, first stopping it with its brake set and power off, four or five feet from an iron gate. A second car in line was also stopped with brakes set and power off. A third vehicle, a combination tractor and trailer, 33 feet long and weighing ten tons empty, was stopped two or three feet behind the second car. It was equipped with an air brake system, but the driver had neglected to attach the air hose. The ferry company crew had placed a block against the front wheel of the first and second cars in line, but not in front of the tractor-trailer. Warnings were posted prohibiting drivers from starting their motors before the boat was made fast. The driver of the third truck started his motor by cranking. It started forward in gear, ran into the second car and pushed it against plaintiff's decedent's truck with such force that it went through the gates and into the water so quickly that decedent was drowned. In granting judgment n. o. v. in favor of the ferry company, on the ground that its negligence could not be said to have been a substantial or legal cause of plaintiff's decedent's death, the court said (page 574) :

"The answer to this inquiry depends on whether the Pyramid Company's driver's conduct was so extraordinary as to not have been reasonably foreseeable, or whether it was reasonably to have been anticipated. We think that proper appreciation of the recklessness (Restatement, Torts, Vol. II, Section 500) of his act requires the court to say his conduct was so extraordinary as not to have been foreseeable and that accordingly the learned court below should have granted defendant's motion for judgment."

To the same effect is Roadman v. Bellone, 379 Pa. 483. In that case, plaintiff's car was struck by

another which forced the former's car into a telephone pole. Plaintiff was thrown from the car and a transformer that was strapped, not bolted, to the pole fell upon him. The court sustained a compulsory non-suit in favor of the power company defendant on the ground that even if the company was negligent in its maintenance of the transformer, such negligence was not a legal cause of the accident. After citing the Hendricks case, supra, the court stated at page 493:

"In view of the particular circumstances of this case, —including the recklessness with which the police car was operated, the location of the pole on private property, the force of the blow which moved the pole one inch from its base, and the fact the plaintiff was thrown out of his car and landed on the very spot on which the transformer fell, after glancing off plaintiff's car,—we conclude that the manner in which the Power Company maintained its transformer on the pole was not a legal cause of the plaintiff's injuries."

In other cases the court, still treating the question of foreseeability as one of causation, has held that under the facts of those cases, the immediate manner in which plaintiff's injury occurred was not so extraordinary as to be unforeseeable and, hence, that the original negligent act of defendant was a proximate cause. For example, in Mautino v. Piercedale Supply Company, 338 Pa. 435, a defendant was held liable who supplied, in violation of a statute, cartridges to a boy under the age of 16 years, to whom another gave a gun, the firing of which caused plaintiff to be injured. The court held that such action ought to have been foreseen by defendant, that the supplying of the gun was not a superseding cause of plaintiff's harm, and that, therefore, defendant's original act was a legal cause of plaintiff's injury.

Also, in Styer v. Reading, 360 Pa. 212, defendant city which operated a playground was held liable to the

minor plaintiff who was injured when a boy with whom she was playing batted a shuttlecock unexpectedly at her, striking her in the eye. The court stated, at page 217: "It was not extraordinary that Richard would strike the shuttlecock immediately when minor plaintiff tossed it to him the last time."

And in Malitovsky v. Harshaw Chemical Company, 360 Pa. 279, it was held that defendant chemical company should have foreseen the consequences of delivering acid in a defective drum and that its negligence in so doing was a proximate cause of the injury to plaintiff who was injured by the acid when he moved the drum, even though the railroad company's employes meanwhile had negligently moved the drum to the common area where it was accessible to plaintiff.

Accordingly, whether the question of foreseeability in the instant case is treated as one of negligence or as one of causation, the result is the same, viz., defendant power company is not liable for plaintiff's injury. From the latter standpoint, the chain of events which brought its wires into contact with plaintiff and plaintiff's resulting injury were so extraordinary that even if the power company were negligent, its negligence was not a proximate or legal cause of plaintiff's injury. Its demurrer, therefore, must be sustained . . . .

### Order

Now, September 28, 1962, it is ordered that the preliminary objections of defendant Pennsylvania Power Company in the nature of a demurrer to plaintiff's complaint be sustained and that judgment be entered in favor of defendant.