## Martin et al., Appellants, *v.* Philadelphia Gardens, Inc.

Argued November 23, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Maurice H. Brown,* with him *Samuel Kohn,* for appellants.

*Howard R. Detweiler,* with him *Frank R. Ambler,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, January 3, 1944:

This is an appeal from the refusal of the court below to grant a new trial.

The plaintiff, a minor aged thirteen years at the time of his injury, brought by his guardian an action in trespass against the defendant. The defendant is a corporation which owns and operates a roller skating rink in Philadelphia. While the plaintiff was skating in the defendant's rink another patron, who was also skating in the rink, came into violent collision with the plaintiff, causing him to be thrown to the floor and to be injured seriously. The negligence alleged is that "the defendant permitted a patron, who was disorderly and visibly intoxicated, to use and skate upon the rink of the defendant and the defendant failed to exercise reasonable care under the circumstances and that the defendant knew or should have known of the condition of that patron", as he "was upon the premises for some time prior to the accident and defendant knew or should have known of his presence". Plaintiff arrived at defendant's rink at 7:30 o'clock on the evening of June 20, 1941, and he paid 46 cents as his admission charge. At about 8:15 P. M. he first saw the patron who later collided with him. At about 9:30 P. M. the patron "cut across the floor . . . and he fell, and as he fell his skate hit plaintiff's foot and knocked plaintiff over." As a result of the fall, plaintiff's arm was broken in two or three places and he

had to have his arm put in a cast where it remained for seven weeks.

Vincent A. Catallo, a witness called by the plaintiff, testified that he saw the patron about 7:30 P. M., and he described him as "the man that was intoxicated". He noticed that the patron's face was red and his eyes were bloodshot. "He was skating around, staggering, and he hit a man and a lady." He said "two attendants rushed out and picked up the intoxicated man". Mary Campo testified that the patron "asked me if I would have a soda with him" and "he smelled as if he had been drinking". She testified further that after she declined his invitation to "have a soda" he asked if she "would help him down the walk; he couldn't make it by himself." Shortly afterwards the patron fell "headlong into the grass". Next time she saw the patron was when the minor plaintiff was on the floor and the patron was "right beside him". At the close of the case the trial judge directed the jury to bring in a verdict for the defendant.

This case presents a most unusual record of interference by a trial judge with an attorney who is trying to present his client's case. The trial judge was apparently determined that the plaintiff should not prove the averment that the patron who caused the injury was drunk, which alleged drunkenness was the basic issue in the case. After witness Catallo testified that the witness was intoxicated he was asked, "How do you know?" The court sustained the objection to this question. Why a witness should not be permitted to tell how he "knew" of the condition in respect to sobriety of a person whose alleged intoxication was a fact in issue is incomprehensible to anyone familiar with trial procedure. Obviously, when a witness states a certain thing to be a fact he should be permitted to reveal the basis of his knowledge of it. A few seconds later the same witness was asked, "Whom did you see there [on the floor]?" When the answer was, "I saw an intoxicated man", the court

said, "I will withdraw a juror if this is kept up." What the trial judge apparently objected to having "kept up" was the evidence of the patron's intoxication. Later when the same witness testified, "He was skating around, staggering, and he hit a man and a lady, and the intoxicated man fell and the man that the lady was skating with helped pick her up, two attendants rushed out and picked up the intoxicated man," the court again threatened to "withdraw a juror". Why a juror should be withdrawn because a witness described the dangerous antics of a drunken patron whose actions are an important part of the basis of plaintiff's complaint is a mystery which a careful perusal of this record does not dispel.

When another witness testified that the patron "smelled as if he had been drinking" the court commented "No". What justification the court had negativing this witness's testimony does not appear. A moment later the court objected to the witness saying, "This man smelled of liquor" and ordered the answer stricken out. A little later the same witness testified that the patron couldn't walk down the walk; "he couldn't make it by himself", and when she was asked "Why couldn't he?", the court refused to permit her to answer this very pertinent question. Later when the witness was asked this question: "The man you helped down the walk was lying alongside of Johnny?" and she replied, "That's right," the court ordered the answer stricken out, in spite of the obvious propriety of the witness's identification of the drunken patron as the man whom she helped down the walk. The question was then put to this witness in another way and the court refused to let the witness answer. Later the witness was asked the question as to whether or not she smelled the patron's breath, and the trial judge refused to let her answer. Again the witness was asked this question: "What did you observe of his [the patron's] condition when you took him down the walk?" She answered, "He had been drinking and

couldn't very well walk a straight line himself." The court ordered that answer stricken out.

Such judicial conduct as this record thus discloses merits and receives the condemnation of any person who has any regard for justice and for that "due process of law" by which the cause of justice is served. That the trial judge disdainfully flouted the facts is evident in the opinion written by him in which he said, after stating that the defendant owed its patrons the duty of ordinary care, "We find no evidence in the record to support the conclusion that it failed in this regard. The plaintiff's witnesses observed no objectionable or unusual conduct on the part of anyone." These last two sentences belie this record. Nothing could be clearer than the fact that the patron complained of was drunk and that he was a menace to all the other patrons in the place and that he was there for a sufficient time for the defendant to be charged with knowledge of the fact, for two attendants of the defendant corporation rushed out and picked him up. It was the defendant's duty to eject promptly from its place of public entertainment a man in the drunken and dangerous condition of this patron, and it is answerable in damages for its failure to do so.

It is axiomatic that "the first and most essential element in a jury trial is a wise, learned, impartial and competent judge".* A litigant who is denied this "essential element" is deprived of that "due process of law" which in this country he is entitled to. This plaintiff's cause of action was not litigated according to our established standards of due legal process. He is therefore entitled to a new trial.

The judgment is reversed with a venire.

Mr. Justice LINN and Mr. Justice HORACE STERN concur in this result.

---

* Quoted from the address of Joseph H. Choate before the American Bar Association on August 18, 1898.