Hambleton et al. *v.* Selden et ux., Appellants.

Argued March 18, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Allen S. Olmsted, 2nd,* for appellants.

*Thomas J. Reilly,* with him *Albert H. Pearce* and *Reilly & Pearce,* for appellees.

OPINION BY HIRT, J., July 23, 1948:

Plaintiffs are real estate brokers. This action was brought to recover a commission of 5% on $20,000, with interest, as compensation for procuring a purchaser for defendants' land, in accordance with an alleged sales agreement entered into by them with plaintiffs. Defendants repudiated the sale made by plaintiffs on their behalf and sold the land through another broker for $21,000. The jury found for the plaintiffs in the sum of $1,072. Defendants' motions for judgment n. o. v. and for a new trial were refused and judgment was entered on the verdict.

No writing passed between the parties. If there was a contract it was entirely oral, but no exclusive agency is claimed. Plaintiff Hambleton testified that he "was introduced to Mrs. Selden by a mutual acquaintance in a store in Drexel Hill in the Spring of 1945"; and that in conversation with her "She, Mrs. Selden, told me she lived at 1140 Lindale Avenue, and would like to sell the house for $20,000." He testified further: "I told her I would like to try to sell it. And she told me that I might if I wished. Several days after that . . . I called at the house, and Mrs. Selden showed me through the property. . . . After looking through the property with Mrs. Selden, I again discussed the price of $20,000 with her, and told her that our commission was five per-cent, that I would try to sell it for her." He saw her again on July 21, 1945 and submitted a tentative offer by a prospective purchaser at a lower price, which she re-

fused to consider. This plaintiff saw Mrs. Selden on only three occasions and the substance of his conversations with her is stated above. He did not talk with the other defendant, W. S. K. Selden, at any time. A salesman in plaintiffs' employ took a prospective purchaser through the house by appointment with Mrs. Selden; she, according to his testimony, stated to him that the sales price was $20,000. There is evidence that W. S. K. Selden was informed of the alleged authority to sell the property, given plaintiffs by his wife, and that he did not repudiate the arrangement. Plaintiff Ezekiel testified that pursuant to an appointment made by Mrs. Selden, W. S. K. Selden conducted him and a prospective purchaser through the house. According to Ezekiel's testimony Selden stated he would not make any allowance for needed repairs but that he would accept $20,000 for the property.

Where a real estate broker procures a purchaser ready and willing to buy the property upon the terms fixed by the owner, the broker is entitled to his commission on the refusal of the owner to consummate the sale. *Schamberg v. Kahn*, 279 Pa. 477, 124 A. 138; *Jacobs v. McKelvey*, 130 Pa. Superior Ct. 417, 197 A. 494. The right of a broker to a commission is a matter of contract, and that question in this case was for the jury. *Rick v. Moyer*, 296 Pa. 176, 145 A. 793; *Berry v. Eastman et ux.*, 156 Pa. Superior Ct. 349, 40 A. 2d 102. Plaintiffs' evidence, if found to be credible, is sufficient to charge that the defendant W. S. K. Selden adopted a contract made by his wife, as his own. That conclusion may be implied from his acts. Defendants are not entitled to judgment n. o. v.

In their affidavit of defense, defendants deny that they retained plaintiffs as their agents to sell their property and their testimony sustains the denial. Mrs. Selden's version of the conversation with Hambleton, in effect, is that she merely authorized him to submit an offer for the property stating: "I am not too much

interested in selling the house, but anyhow, if you can produce someone who will pay $20,000, I might discuss it, but I am not interested unless you can." She denied that a sales commission was discussed. Defendant, W. S. K. Selden, testified that he never authorized his wife to employ an agent to sell the home and that he never talked with plaintiff Hambleton until after his demand for a sales commission prior to bringing suit in this case. Selden denied that he showed the house to Ezekiel and a prospective purchaser but said that he allowed them to go through the house unattended. He also denied discussing with Ezekiel a price at which he would sell the property.

The defendants did not receive a fair and impartial trial on the issues raised by their defense. If found to be credible, their testimony entitled them to a verdict in their favor. Throughout the trial, on a number of occasions, the trial judge by gratuitous statements showed partiality for plaintiffs and belittled the position taken by defendants, and counsel in their behalf. At times his comment was facetious conveying to the jury the impression that defendants' testimony was not to be taken seriously. Defendants were otherwise prejudiced. For example, the testimony of Sarah J. Swimford, the real estate salesman who produced the buyer at $21,000 and was paid a commission, evoked this examination by the trial judge: "Q. You made the sale, and you got the commission? A. Yes. Q. You were lucky, weren't you? A. Yes." The implication is that the defendants were willing to perform an agreement only when it was to their advantage. This seems clear from the comment immediately following, when evidence of the circumstances under which the property was actually sold, was excluded. The record shows this: "The Court: What difference does it make if she came along and made an offer while these negotiations were going on, and it was accepted, and she [i. e., the wife-defendant] pays a commission to them, when another man has done the work?

Isn't he entitled to be paid?" In the charge the trial judge properly instructed the jury that plaintiffs could recover only if the evidence established a contract with both defendants. Yet there again by innuendo and otherwise he indicated more than mere disbelief of defendants' testimony. He characterized the purchaser produced by plaintiffs as "poor Mr. Bowman" and referring to Hambleton's demand on Selden for a commission said: "The plaintiffs claim a commission, notwithstanding the conversation allegedly had, with vehemency, maybe with profanity. I don't understand the maneuver of the commander-in-chief. I guess I'm getting too old to understand. My friend over there on the other side perhaps understood that maneuver better than I did. We don't understand that, but whatever the language may have been that didn't excuse the defendants if a contract had been entered into to pay the commission. Such a person, real estate brokers, is in the business for a livelihood, and when they work and produce purchasers, and buyers on the basis of the terms they were authorized to get them, and all of a sudden be thrown aside like casting pearls to the swine, and all of your efforts in vain, though you are obliged to maintain an office, pay rent and so on, and receive no commission for your efforts, and the person owning the property doesn't want to pay, says he has no responsibility, he, the plaintiff, both of them, have a perfect right to institute this suit if necessary to endeavor to recover." That was more than a statement that plaintiffs had the right to bring this action; in the context of the charge it was an argument favoring plaintiffs' recovery.

Because of a denial of an impartial trial, the defendants here were deprived of due process of law (Cf. *Martin et al. v. Phila. Gardens, Inc.*, 348 Pa. 232, 35 A. 2d 317) and a new trial must be awarded on that ground.

Judgment reversed with a venire.