## Pello *v.* Pasco, Appellant.

Argued March 22, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Francis H. Patrono*, for appellant.

*H. Russell Stahlman*, with him *Victor E. Riva, Howard F. Carson* and *Stahlman & Carson*, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 11, 1949:

This is an action of trespass in which plaintiff was awarded $4,000 damages for personal injuries suffered as result of being struck by an automobile driven by the defendant, while the plaintiff was crossing a concrete highway, Route 88, from east to west in the Borough of Dunlevy, Washington County, on May 4, 1947, at about 4:05 P. M. At the time the defendant was driving south on the western lane of this two lane highway.

Plaintiff wished to board the street car which stopped at the trolley platform located on the west side of the highway and which was due in five minutes. When

plaintiff started across the highway the eastern lane was occupied by a line of northbound automobiles which were halted because of some obstruction. Plaintiff passed between two of these northbound cars. She testified that when she got to the west side of the cars, she stopped to observe the condition of traffic northward in the west half of the highway. She saw the defendant's automobile opposite a telegraph pole 256 feet distant and "thought she had enough time to get across." When at the middle of the west half of the highway, plaintiff, observing the speed of the oncoming automobile, hurried. When asked if she continued to look in the direction of the approaching automobile she replied: "Well, at the same time I wanted to see if my street car was coming, at the same time I watched for the automobile." The street car was coming from the south. When asked if she still thought she had time to cross the highway when she was halfway across the west lane, she answered: "Yes." She quickened her gait but did not run. On being questioned on this point she replied: "No, I didn't exactly run, I still decided I had enough time." When asked how far she was from the edge of the concrete of the road when struck, she said that she "was about six inches on the black top off the concrete." At this point the concrete highway was 16 feet wide. Adjacent to the west side of the concrete there is three feet of macadam top and adjacent thereto seven feet of "reddog" and then a bank. There was no sidewalk along this highway. Plaintiff testified that defendant's automobile did not slow up as she proceeded to cross the street. From the force of the impact when struck by defendant's car she was "thrown up in the air", hit the bank on the west side of the highway and "landed in a mud puddle beside the bank." She suffered a fracture of the right lower leg and a fracture of the right wrist, also multiple body bruises and abrasions. Both the tibia and fibula of the right leg were fractured.

Defendant testified that at the time of the accident he was driving "around twenty to twenty-five mile an hour." He said that the plaintiff when "about ten or twelve feet in front of" him "darted out" in front of his car. He applied his brakes and then struck her. On cross-examination defendant admitted he knew that all the people living in the Borough of Dunlevy live on the east side of the road, and practically all persons living there who are desirous of boarding the trolley must cross Route 88 in order to get to and from the trolley platform, which is the only point in the Borough where the trolleys stop. He also admitted that when his car came to a collision with Miss Pello the force of the impact "knocked her in the air." It is inferable from the defendant's examination and cross-examination that when he first saw the plaintiff crossing the highway he was from sixty to ninety feet away from her.

Mrs. Peri, an eye witness to the accident, testified that plaintiff was on the "black top" of the road when she was struck. A state policeman who investigated the accident within a few hours thereafter testified that the wheel tracks of defendant's car were visible on the berm for a distance of over fifty feet backward from the point at which plaintiff was struck. Several witnesses testified that these skid marks ran for a distance of over fifty to sixty feet near the outer edge of the concrete swerving gradually in the direction of the black top until the marks finally went off onto the black top continuing thereon for several feet to the spot where this collision occurred.

After the verdict defendant moved for judgment n. o. v. on the theory that plaintiff was guilty of contributory negligence as a matter of law. That motion and a motion for a new trial were refused.

President Judge GIBSON in his opinion refusing to enter judgment for the defendant n. o. v. correctly summed up this case as follows: "Resolving all conflicts in favor of the plaintiff, the plaintiff stopped

about the center line of the highway and saw defendant's automobile approaching a distance of 256 feet away. She thought she could cross safely. She was under no obligation to assume that the defendant would operate at a high rate of speed under the congested circumstances apparent to all. According to her evidence, she did continue to observe the approaching car and the rapid approach of the car caused her to travel faster. After she had crossed the highway there was sufficient room for the defendant to pass but he ran off on the berm which she had reached and collided with her."

In *Michener v. Lewis*, 314 Pa. 156, 160 (1934) we said: "Pedestrians cannot be charged with negligence because they assume that the driver of a motor vehicle will exercise due care under the circumstances and then act upon that assumption." In *DiBona, Admr., v. Philadelphia Transportation Company*, 356 Pa. 204, 210 (1947) we said: "It must not be forgotten that streets are for the use of pedestrians as well as for the use of motor vehicles and of street cars and that the law does not require that before a pedestrian can cross a street at a certain point he must be sure that no vehicles are approaching that point from any direction. He is held, of course, to a high degree of care when he crosses a highway between regular crossings but if he sees a vehicle approaching at a considerable distance away at a moderate speed, he has a right to calculate whether or not he can safely cross the street before the vehicle reaches that point, giving himself a wide margin of safety." Our opinion in that case reiterated the principle that ". . . it is only in those cases where contributory negligence is so clearly revealed that fair and reasonable individuals could not disagree as to its existence that it may be declared judicially" citing cases. We quoted from Huddy's Automobile Law, Vol. 5, section 92, page 159, this statement: " 'One is not necessarily guilty of contributory negligence, if, when about

to cross a street frequented by motor vehicles, he looks for approaching machines and sees one, but believes that it is safe for him to cross the street before the car passes over the crossing:' " (citing cases).

Considering the fact that there was no sidewalk for pedestrians where this accident occurred, that residents of this locality were accustomed to cross this highway from east to west at this point in order to board the street car which stopped only at the passenger platform situated there on the west side of the highway, and the fact that the defendant's car when it struck the plaintiff was on the berm of the road off the concrete, the court below would not have been justified in declaring as a matter of law that the plaintiff had not made out a case free from contributory negligence. Whatever conflict there was in the testimony between the plaintiff and her witnesses and the defendant and his witnesses, as to whether or not plaintiff was sufficiently vigilant, was for the jury to resolve.

This was not a case which showed the plaintiff to be clearly guilty of contributory negligence. The case was submitted to the jury with proper instructions, and the verdict was not against the weight of the evidence.

The judgment is affirmed.