## Malta v. Houck, etc., et al.

*M. A. Bank* and *C. A. Rothman, S. L. Wickenhaver* and *Montgomery, McCracken, Walker & Rhoads,* for defendant.

Bok, P. J., March 11, 1954.—Plaintiff went to work for defendant as sole sales representative in the Philadelphia territory while defendant maintained the headquarters of his business as manufacturer's representative in Baltimore.

They signed a contract (exhibit P-1) which had been drawn without benefit of counsel, with the usual result. The contract is dated May 15, 1951, and plaintiff resigned his position a year and 11 months later.

This suit is for an accounting for the last 11 months, from June 1, 1952, to May 1, 1953. He asked for an accounting upon resigning and was promised one, but when it was not forthcoming almost at once he began this action by foreign attachment within a very few days.

The question before us narrows to whether defendant properly kept his books on a cash basis or whether he should have kept them, for the purpose of plaintiff's rights, on an accrual basis: to put it another way, whether he was entitled to share only in commissions received by defendant during the accounting period, as defendant contends, or to commissions that were received after the accounting period but were based on orders secured by him during the accounting period, as plaintiff contends. The jury found that plaintiff was entitled to an accounting and in a special finding decided that he had not agreed, by his actions, to the cash basis of bookkeeping. Defendant asks judgment n. o. v. or a new trial.

The contract provides that plaintiff was to receive a "guaranteed annual salary of $7500". It went on: "In addition to the guaranteed salary, a bonus of 25% of the net commissions of the territory will be paid. However the total salary, including the bonus, shall not exceed 50% of net commissions, 'net' meaning after deductions of all expenses." Items of expense were then enumerated.

The contract is silent upon the method of bookkeeping in calculating commissions. Plaintiff now sues on the theory that under the accrual method there must be due him somewhere near $10,000, which he cannot figure exactly because defendant has the records.

The trial judge charged that with the contract silent and no conversation or course of conduct between the parties appearing, the law supplies the accrual method of bookkeeping as governing. We think this inaccurate.

Defendant is in effect a sales middleman between suppliers of parts and manufacturers of wholes in the electronic field. He receives commissions, which are the profits of his business, for finding outlets for the suppliers' products. Orders are subject to cancellation for a variety of causes and to renegotiation in the case of Government contracts. This raises no problem, since plaintiff admits that he would not be entitled to commissions on canceled orders or on the downslope of renegotiation.

At the end of the first year of his employment, plaintiff received a statement from defendant, showing that the Philadelphia territory had lost money and that with plaintiff's salary properly counted in as an expense (the propriety of this inclusion was specially found by the jury), the commission account was overdrawn. Plaintiff accepted this statement without question, save for an error that was corrected. By his acceptance he estopped himself from asserting that his salary should not be included as an expense. If his salary had not been included, the territory would have shown a balance of commissions. Plaintiff makes no point of this and could hardly do so, since he did not bring suit upon the first year. It was therefore unnecessary to leave this point to the jury at all.

Defendant testified that although the first year's statement shows commissions, minus any dates, the computation actually included several commissions re-

ceived during the year from orders placed before plaintiff entered his employ.

Plaintiff said that he knew nothing of this, but added that he didn't care when commissions appeared on his annual statements, even if he had placed the orders in one year and defendant had received commissions on them in the next. The reason was that so long as his employment continued, the yearly earnings would average out and no question of accrual would practically arise until the final year of employment. In that year, accordingly, the final computation would have to be on the accrual basis, possibly throughout the employment period, which might have lasted 2 or 20 years.

Our view is that the policy of the law follows the real nature of the employment.

The law is clear that in the broker and principal relationship where a single sale is involved and the broker does his full duty when he produces a buyer who is ready, able, and willing to buy, he has earned his commission at once and is entitled to it, whatever may happen to the sale. Sales of real estate are especially in this category. See E. P. Restein v. McCadden & Bro., 166 Pa. 340 (1895) ; Schamberg v. Kahn, 279 Pa. 477 (1924) ; Jacobs v. McKelvey, 130 Pa. Superior Ct. 417 (1938), and Hambleton et al v. Selden et ux., 163 Pa. Superior Ct. 259 (1948).

In Ainesworth v. Martin Company, 77 Pa. Superior Ct. 490 (1921), a purchasing agent was allowed commissions, under a contract requiring receipt of the product before commissions were payable, when he resigned his employment between the time he gave an order and the time his principal received the product. The court said, in affirming judgment for plaintiff:

"When the plaintiff performed the services, by purchasing the coal, *that was all that he was required to do under the contract,* although the compensation for his services was dependent upon the coal being deliv-

ered to and received by the defendant." (Italics supplied.)

Commissions are thus considered as earned at once by an employe who is under a continuing contract of employment and has no further duties beyond making the sale or placing the order. See Aikens v. Thackara Co., 15 Pa. Superior Ct. 250 (1900); Schlesinger v. Star Ins. Co., 100 Pa. Superior Ct. 584 (1930); Bodman v. Fisher Co., 268 Pa. 535 (1920).

In Fidelity Trust Co. et al., v. Whitehall Cement Mfg. Co., 295 Pa. 179 (1929), involving a commission accounting period, the court said:

". . . here the right to a commission was only coincident with the term of employment. If the contract were one of salesmanship for the sale of the cement on commission, there might be merit in appellee's contention."

It should be noted that compensation was on salary plus an annual share of commissions.

But where an employe has continuing duties in connection with the sales or orders that he brings about and on which the profits or commissions of which he gets a share are calculated, the right to commissions ceases with his employment.

In Claflin v. The Manufacturers' Club of Philadelphia, 104 Pa. Superior Ct. 163 (1931), plaintiff resigned a contract that paid him commissions on advertising contracts and required him to assist in collecting delinquent accounts and supervising certain advertisements. The court refused him commissions that fell in after the date of his resignation, saying:

"When the plaintiff voluntarily severed his relations with the defendant, he no longer performed the work that followed the receipt of the advertising contracts, which his contract contemplated he was to do. *For part performance he asks full pay.* One ought not to

be forced to pay out money unless he can get that for which he stipulated." (Italics supplied.)

Plaintiff in the instant case admitted under cross-examination that his orders involved certain continuing duties: orders for scheduled deliveries over a period called for servicing during delivery; inspection problems arising in a customer's plant during delivery had to be investigated; delinquent accounts had to be prodded and collected; delivery schedules had to be supervised. Defendant definitely testified to these needs, and while they are not spelled out in the contract, they were obviously inherent in plaintiff's duties.

In addition to these considerations, plaintiff was not paid on a straight commission basis. He was on salary, with a share of the profits as a bonus. His salary was substantial enough to carry him in years when expenses of his territory might exceed commissions, as in fact they did during his first year of work. The contract uses the terms "guaranteed salary" and "bonus", and most pointedly does it refer to *the total salary, including the bonus*". The whole arrangement was predominantly one of salary and of general managerial duties inconsistent with the idea of a series of single and completed transactions that produce commission compensation. As such, the contract can be considered only as an entire and not as a continuing one. Plaintiff's right to share commissions therefore ended with his employment.

It has been suggested that an accounting would show a balance in plaintiff's favor even under defendant's method of bookkeeping. The basis of the suggestion is that defendant admitted failing to include certain commissions on orders secured before plaintiff entered defendant's employ, as well as other commissions of the same kind that were included. Even if this were so it cannot help plaintiff's case. He accepted the statement of July 12 and August 21, 1952 (exhibit P-3),

which was his first year of employment, and he has specifically sued for an accounting "of commissions due or to become due arising out of sales made by plaintiff during the period from June 1, 1952, to May 1, 1953", which was his second year of employment, minus a month. The point of inquiring into the first year was only to determine whether there was an understanding or evidence of a course of conduct that would justify the accrual method of accounting. In view of the testimony by both parties that there was no discussion of how to calculate commissions, and in view of plaintiff's own admission that he had no idea of how exhibit P-3 was made up, he is effectively foreclosed from raising the point now.

Since the relationship between the parties emerges as a matter of law on admitted or undisputed facts, there would be no issue of fact for a jury to resolve.

Defendant's motion for a new trial is overruled.

Defendant's motion for judgment n. o. v. is granted and judgment is entered in his favor.